VINCENT MAY vs. JOHN B. ROCKETT, Guardian, &c.

Slaves held by a *feme covert* under the statute of 1839, do not, upon her death, vest in her children, but in her administrator.

The right of possession, or a right of property which, when it exists in reference to a chattel, generally carries with it a right of possession, is the necessary

20 *

foundation of the action of replevin. *Held*, that R., not having the legal title or right of possession, was not entitled to recover.

IN error from the circuit court of Chickasaw county; Hon. F. M. Rogers, judge.

At the March term, 1851, the defendant in error (who was plaintiff below) brought an action of replevin, as guardian of Richard H. Rockett, against the plaintiff in error, Vincent May, to recover possession of four negroes, to wit, Allen, a negro man; Matilda, a woman; Louiza, a girl; and Douglass, a boy.

Declaration in the usual form, and plea of general issue. At the September term, 1851, the defendant in error, as guardian aforesaid, recovered judgment against plaintiff in error for the value of said slaves, together with hire from the time of the execution of the writ up to the trial of the cause.

The facts are: that in the fall of 1847, John B. Rockett inter-married with Elizabeth, the daughter of the said Vincent May; that John B. and wife lived in the house of May until January, 1848, when they removed themselves to a residence close by May's; that when they removed themselves, May delivered into the possession of his said daughter three of said negroes, to wit, Allen, Matilda, and Louiza, and in the year 1849, the other slave, Douglass, came into their possession, he also having previously been owned and possessed by said May. Rockett and wife kept possession of said slaves until the 6th of August, 1850, when Mrs. Rockett died. That on the — day of November, 1850, May entered peaceably upon the premises of said Rockett and took said negroes into his possession, claiming them as his own property, and asserting that they were only loaned and not given to his said daughter. It was also established that the said ward of Rockett was the only child by said marriage.

The plaintiff below relied on the following fact: Sarah Isbell and Sarah E. Isbell both testified, that on a certain occasion in March, 1850, at the house of May, and in presence of Mrs. Rockett, they both heard May say, "that he had given Mrs. Harris, (his daughter,) three negroes, Elizabeth Rockett

four negroes, and Mrs. Aaron Harris, (another daughter,) three negroes." Calvin York also testified, that he heard May say, in reference to a suit in court between one Samuel Williams and his daughter-in-law, thus, "when I give property to my children I don't take it away again;" "but that May was alluding to certain property he had given to one of his sons who had recently died, and his wife kept the property." Timothy Brooks testified, "that in 1849, when the slave Allen ran away, he heard May say, that he had told John B. Rockett to sell said slave Allen." James May testified, "that on the morning that Vincent May put the slaves Allen, Louiza, and Matilda, into the possession of his daughter, he said, 'Here, daughter, are three negroes; I merely send them home with you to see if you can make a support.' To which his daughter replied, 'very well, father, that is the only way I want them.'" H. Harris testified, "that in 1849, before the slave, Douglass, went into the possession of said Elizabeth, that he was at the house of May, where he found Mrs. Rockett on a visit; that in the evening, when Mrs. Rockett was about to depart, she observed to her mother, (wife of May,) 'Mother, I wish you would let me have one of these little negroes,' pointing to the boy Douglass and several other small ones. Mrs. May replied, 'Daughter, what do you want with it?' Mrs. Rockett replied, 'Why, it can pick up chips and be company for me.' Mrs. May answered, 'well, you can take any one of them you please, and change them as often as you like.'" About that time the slave went into the possession of said Mrs. Rockett. Leona B. Harris, (sister of Mrs. Rockett,) testified, "that during the last sickness of Mrs. Rockett, she said in presence of her husband, 'that she wanted her property to go back, on her death, to her father, (May,) as it was never given, but only loaned to her;' and, 'that she wanted witness to take her infant child and raise it.' Also on another occasion previous, Mrs. Rockett, when speaking of her declining health in presence of her husband, observed, 'that her property was only loaned to her and not given.'" Defendant below then offered to prove, by four witnesses, that they had heard numerous conversations about said

slaves between May and his said daughter in her lifetime, in which May always said, that he had merely loaned said slaves to her. She repeatedly acknowledged and declared, that said negroes were never given, but only loaned to her. These witnesses also stated, that they had heard Mrs. Rockett often say, in the absence of May, that the negroes were loaned and not given, and that they must return to her father.

The above conversation and declaration offered to be proved and stated by the four witnesses, were ruled out by the court, because the husband of Mrs. Rockett was not proved to be present when they occurred, to which action of the court defendant below excepted. Judgment was rendered for plaintiff, Rockett. The bill of exceptions shows a motion for a new trial made and overruled, and a writ of error prayed by May.

*James T. Harrison*, for appellant.

Where the infant sues by reason of the title or right of possession being in himself, the suit should be in his own name, as in *Parr* v. *Gibbons*, 1 Cushman, 92, by his next friend., Hutch. Code, 848, § 166.

The only evidence in the case as to guardianship of any kind is, that the plaintiff in the court below was the father of the infant. We admit that fact. He does not aver, that he is any other kind of guardian, and shows no other title or right of possession in himself. The father of a minor is only guardian by nature, and as such has only the care and custody of the infant's person; he has no control over his property. The father has no cause of action, and cannot maintain this suit as guardian; and the payment of a judgment or decree to a guardian by nature is no discharge. *Miles* v. *Kaigler*, 10 Yerger, 10; *Isaacs* v. *Boyd*, 5 Port. 388; 1 Johns. Ch. R. 3, 153; 6 Ib. 375; *Hyde* v. *Stone*, 7 Wend. 356; 3 Brown's Ch. R. 186; 3 Pick. R. 217; 4 Gill & Johns. 323; 2 Kent's Com. 219, 220; 21 Vermont R. 539.

After the death of the mother, her property went to her administrator, it being personal estate, and not to a guardian of her infant child; and as soon as letters were taken out the pro-

perty vested in the administrator by relation back to the time of the death. 1 Williams on Ex'ors, 432, 433 ; *Jewett* v. *Smith,* 12 Mass. R. 309, (319) ; 2 Brevard's R. 317.

And the title to personal property draws to it the right of possession. 1 Williams on Ex'ors, 434, 435.

So an administrator may have an action of trespass or trover for the goods of the intestate taken by one before letters granted unto him. 1 Williams on Ex'ors, 432, 433.

It was in proof expressly, that letters of administration had been taken out; that the property had not been turned over to a guardian, &c. &c. *Morse et al.* v. *Clayton,* 12 S. & M. 374.

The action is in the *detinet,* for an unlawful detention of the property, and not in the *cepit.* Under the pleadings, it is not competent to show an unlawful taking unless it goes to sustain an unlawful detention. The detention unlawfully is the gist of the present action. But the taking was peaceable, as will be seen from the evidence.

The court erred in excluding from the jury most important evidence, that went directly to the merits of the matters in issue.

John B. Rockett had no interest in the property. He claimed for his child through the mother. The mother was dead, saying upon her death-bed, that the property was her father's, and that it was only lent to her. The contest was, whether it was a loan or a gift. If a gift, it was the separate property of the wife.

The father, (May,) the plaintiff in error, produced four witnesses, and offered to prove by them the repeated acknowledgments of his daughter, "in numerous conversations," in which she always stated, that the slaves were lent to her, and not given, and that these acknowledgments were made both to the father and other persons ; but the court ruled out the evidence, to which ruling exceptions were taken. The reason assigned by the court was, that the husband was not present.

It is admitted, that the testimony would have been competent if the husband had been present; and, indeed, the court admitted the declarations of the wife, in one instance, when the husband chanced to be present. In conveyances of

property made by the wife, the statute requires that she should be examined separate and apart from her husband; and it has always been heretofore considered that a *feme covert* would be more apt to acknowledge and admit the truth out of, rather than in, the presence of the husband, where either his or her rights were concerned.

The verdict does not find the issue, and is not responsive. The verdict is, that " we, the jury, find that the defendant and his securities restore to the plaintiff one negro named Allen, or pay him nine hundred dollars as the value of said negro, and one negro girl, &c. &c."

The verdict must find the issue for or against the party tendering it. *Holms* v. *Wood*, 6 Mass. R. 1; *Sawyer* v. *Pitts*, 4 Stew. & Port. 365; *Wickliffe* v. *Sanders*, 6 Mon. 296; *Toumlin* v. *Lessne*, 2 Ala. R. 359. And be responsive; *Lyon* v. *Stewart*, 5 J. J. Marsh. 676; *Vinel* v. *Brownrigg*, 2 Dev. Law R. 537; *Brown* v. *Chase*, 4 Mass. R. 436.

The verdict is bad if it finds only part of the issue, or varies from it, and no judgment can be rendered upon it. *Patterson* v. *The United States*, 2 Wheat. 221; 1 Wash. 272; *Crouch* v. *Martin*, 3 Blackf. R. 256; *Moody* v. *Keener*, 7 Port. 218; *Garland* v. *Davis*, 4 How. (U. S.) R. 131.

By the statute, the defendant may plead not guilty, and this plea shall put in issue, not only the right of the plaintiff to the possession of the property, but also the wrongful taking and detention thereof; and the plaintiff's right must have accrued within one year. Hutch. Code, 818.

This is not a general verdict, finding the issue in favor of the plaintiff, but a special one, and, as such, it is wholly insufficient.

*Greenwood* and *Thornton*, on the same side.

*C. B. Baldwin*, for appellee.

This was an action of replevin to recover four slaves, forcibly taken from the possession of plaintiff below, as guardian, by the defendant below. It is now contended, that the action should have been brought in the name of the administrator of

Mrs. Rockett, the mother of the ward.	In reply to this cause of error, it is submitted : —

1st. That the record does not show, that the point was raised in the court below.	*Sessions* v. *Reynolds*, 7 S. & M. 130 ; *Talbert* v. *Milton*, 9 Ib. 9.	The fault, if it really is one, was apparent on the face of the papers, and the proper subject for demurrer ; after verdict, judgment, and writ of error, it is too late to avail defendant below.	*Whitaker* v. *Cormfort*, Walk. 421 ; Statute of Jeofails, Hutch. Code, 848.

2d. The only effect of administration on the estate of Mrs. Rockett, would have been to place the property where it was at the time of its seizure by the defendant below ; as the entire estate passed to the only child, no distribution was necessary ; and unless creditors complain, which they do not, the expense of administration would have been useless and without an object.	When the injury is done to property in the possession of a guardian, he must sue, and may recover ; the administrator cannot.	This principle is stated in the elementary books ; and in *Fuqua* v. *Hunt*, 1 Ala. R. 198, a case similar to this in every respect, save that the point was there raised by demurrer, it is decided, that for an injury to the possession, the guardian is the proper party plaintiff.

3d. The taking by the defendant below was tortious.	Then replevin will well lie against the trespasser.	*Parsons* v. *Barnard*, 7 T. R. 142, and authorities there cited ; *Sawtelle* v. *Rollins*, 10 Shep. 196 ; *Pierce* v. *Van Dyke*, 6 Hill, 613 ; *Haythorn* v. *Rushforth*, 4 Harr. 160 ; *McIsaacs* v. *Hobbs*, 8 Dana, 268.

4th. The verdict is clearly supported by the evidence, and from the uniform decisions of this court will not be disturbed.

5th. It is submitted, that the damages are not excessive. If, however, I err in this, a *remittitur* for the excess will be entered.

6th. The ruling of the court below is sustained by 1 Greenl. Evid. 224 ; 1 Phil. Evid. 81.	The act called the women's law of 1839, was designed for the protection of *femes covert*, and but one mode of conveying their estates is allowed.

Mr. Chief Justice SMITH delivered the opinion of the court.

This was an action of replevin brought in the circuit court of Chickasaw county, by the guardian of Richard M. Rockett, a minor, against the plaintiff in error, to recover the possession of certain slaves.

The jury found a verdict for the plaintiff, whereupon the defendant entered his motion for a new trial, which being over-ruled, he filed a bill of exceptions, which contains a full state-ment of the facts of the case.

From which it appears, that the slaves in controversy, as it was alleged on the part of the plaintiff, were the property, acquired by donation from the plaintiff in error, of Mrs. Rockett during her lifetime, who was the wife of the plaintiff, and the mother of the said Richard.

Mrs. Rockett died in possession, and the property is claimed by the said Richard, who was her only child, under the act of 1839, passed for the protection and preservation of the rights of married women.

The pleadings in the case admit the character in which the plaintiff sued; and, conceding that Mrs. Rockett was proved to be the absolute owner of the slaves at the time of her death, the question arises, whether the title thereto vested in her administrator, or directly in the ward, by operation of the statute?

This question was considered in the case of *Marshall* v. *King*, 2 Cushman, 85; and it was decided, that slaves held by a *feme covert* under the statute above cited, did not vest in her children upon her death, but in her administrator.

We perceive no sufficient reason why we should depart from that decision; and shall, therefore, adhere to the rule therein laid down.

It was in proof on the trial below, that administration had been granted upon the estate of Mrs. Rockett; there was, therefore, an investiture in fact of the legal title in the admin-istrator. So long as that title remained in him, he, and not the heir or distributee, was the only person who could maintain an action at law for the recovery of the possession of the said property.

The proof also shows, that there had been no distribution

May *v.* Rockett.

made of the estate of Mrs. Rockett, nor had the said slaves been delivered or turned over to the ward or to his guardian.

The ward, therefore, never had the legal title to the slaves; hence he had no right to the possession which remained in the administrator.

But the right of possession or a right of property, which, when it exists in reference to a chattel, generally carries with it a right of possession, is the necessary foundation of the action of replevin. The defendant in error not having the legal title or the right to the possession, was not entitled to recover. The verdict was, therefore, wrong, and should have been set aside.

But it is said, the defendant in error was legally in possession of the slaves, and that they were taken out of his possession wrongfully. The evidence may sustain this position; but in order to authorize the maintenance of this action, it was indispensable that the right of possession should have been in the ward. We have above seen, that the ward never had the right of possession, and it is not pretended that he ever had possession in fact. During the life of Mrs. Rockett, the defendant in error was in possession jointly with her, or had possession by virtue of his marital rights; but upon her death his right of possession ceased, and all of her rights went to her administrator. But if it were admitted, that he had the right of possession at the time of the alleged wrongful taking, such right of possession would authorize a recovery in his individual character, but not in his capacity of guardian.

Let the judgment be reversed, cause remanded, and new trial awarded in the court below.